IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARK RENALDO LOWE,

                    Plaintiff,

      v.

ROMAN KAPLAN, DAN KLOTZBACH,
and MARY JO SCHMITT,[1]

                 Defendants.

OPINION and ORDER

06-cv-680-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      In this lawsuit brought under 42 U.S.C § 1983, plaintiff Mark Lowe contends that

defendants Roman Kaplan, Dan Klotzbach and Mary Jo Schmitt were deliberately

indifferent to his need for medical care for his back pain.  Now before the court are the

parties' cross-motions for summary judgment.  Because I conclude that plaintiff has not

adduced evidence that any of the defendants were deliberately indifferent to his need for

treatment for his back pain, defendants' motion for summary judgment will be granted and

---

     [1] Although the parties have continued to use plaintiff's original designations of the
defendants in their case captions, plaintiff referred to Roman Kaplan as "Dr. Kaplan" and
Dan Klotzbach as "Nurse Dan," the defendants are identified by their proper names in their
summary judgment materials.  I have amended the case caption accordingly.

1

plaintiff's motion will be denied.

Two brief notes regarding the parties' proposed facts are warranted.  First, many of defendants' proposed facts begin with the phrase "the medical record reflects that . . . ." This phrasing made it difficult to determine whether defendants meant to propose as fact that plaintiff had submitted certain request forms and received treatment in response *or* whether defendants meant to propose only that this is what the medical record reflects.  It appears that they intended the former, and plaintiff responded accordingly.  (Defendants could have made this explicit had they simply proposed the fact, e.g., "plaintiff received an injection on June 10," and cited the medical record as the source.)  Therefore, I considered the underlying facts and plaintiff's response to them to determine which facts were disputed genuinely.

Next, plaintiff has proposed numerous facts regarding his requests for treatment that were sent to prison officials other than defendants.  If there were some link to demonstrate that defendants knew about any of these requests, this information could be relevant to determining whether defendants were deliberately indifferent in denying plaintiff's requests for treatment.  However, plaintiff proposed no facts to make this link.  Although the defendants made plaintiff's medical records and progress notes (suggesting that they were aware of what else was in *those* materials), it cannot be reasonably inferred from this record that defendants looked back over past health service requests whenever plaintiff submitted a new one.  Therefore, I have disregarded plaintiff's proposed facts about health service

2

requests he submitted that were not reviewed by defendants.

From the parties' proposed findings of fact, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

Plaintiff Mark Lowe is a prisoner who was housed at the Kettle Moraine Correctional Institution at times relevant to this complaint.  Defendants Dan Klotzbach and Mary Jo Schmitt are employed as Nurse Clinicians 2 at the Kettle Moraine Correctional Institution.  Defendants Klotzbach and Schmitt are responsible for providing nursing care to prisoners.  Defendant Kaplan is currently employed as a physician at the Dodge Correctional Institution; he provides care to prisoners at other institutions when other doctors are on vacation or ill and when emergencies arise.

To request medical care, prisoners at the Kettle Moraine Correctional Institution must submit a blue "Health Care Request" form to the health services unit.  This form is known as a "Health Service Request" as well.  Completed request forms are turned in to the unit officer.  Requests that are turned in before 4:00 a.m. are delivered to the health services unit, where they are reviewed by nurses.  Requests turned in after 4:00 a.m. are processed the following day.  A "sick call" list is generated according to the information on the request form.  Prisoners may be seen the same day, scheduled for a later appointment or sent a

3

written response, depending on their need for care.  A physician is available to examine prisoners twice a week.  Prisoners must be evaluated by a nurse at sick call before they can be scheduled for an appointment with a doctor.

On January 30, 2006, plaintiff slipped and fell while walking outside at the Kettle Moraine Correctional Institution.  He was seen in the health services unit that day by defendant Schmitt.  On January 31, 2006, plaintiff wrote to the health services unit to request additional treatment. The health service request states that "[t]he nurse directed me to use heat.  Today, I can barely move, my neck hurts & my back."  Plaintiff requested medical relaxers and an x-ray to determine whether he had any permanent damage and checked a box that indicated that he wanted to see someone in the health services unit.  In response, defendant Schmitt recommended that plaintiff use analgesic balm and take piroxicam, an anti-inflammatory medicine, regularly.   Plaintiff had been taking piroxicam for some time to treat a knee problem.  In addition, defendant Schmitt recommended that plaintiff alternate using heat and ice on his back.  Ice has a numbing and anti-inflammatory effect; heat helps relax muscles and increases blood supply.  Defendant Schmitt told plaintiff that he would not be seen by health services staff because he had just been examined and because the analgesic balm and piroxicam needed time to work.

On February 2, 2006, plaintiff submitted a health service request, in which he stated that he had followed all of the instructions and that he was "still hurting."  Plaintiff

requested that he be given muscle relaxers, or that he be seen to determine whether he had "major problems" with his back.

On February 3, 2006, defendant Schmitt responded to plaintiff's request.  She told him that his back would take time to heal and recommended that he "give it time." Defendant Schmitt recommended that plaintiff try walking, gentle stretching, lying down and warm compresses.  She did not arrange for him to see a doctor immediately because she did not believe he had an "emergent" condition and because he was already on the list to see a doctor.

On February 17, 2006, plaintiff was examined by defendant Kaplan.  This was the only time that plaintiff saw defendant Kaplan or had anything to do with him.  Defendant Kaplan was acting as a substitute physician at the Kettle Moraine Correctional Institution that day.

Defendant Kaplan does not review health service request forms or evaluate prisoners at sick call before seeing them.  However, he does review progress notes as part of his examination.  Defendant Kaplan reviewed plaintiff's chart, which stated that plaintiff reported falling on his back on January 30.  The medical record also states that, after the fall, plaintiff was walking well, but that plaintiff "just felt he should have [his back] checked out." Defendant Kaplan noted that plaintiff was taking Tylenol (a pain reliever) and piroxicam. The medical record indicates that plaintiff had been provided a bag for heat and cold

5

compresses, had been encouraged to take Tylenol as needed and inform the health services unit if his pain increased.

Plaintiff was scheduled to see defendant Kaplan to discuss two medical problems: dizziness and his back pain.  With respect to plaintiff's complaints about back pain, defendant Kaplan determined that plaintiff was in stable condition and that his gait, flexion and squatting were within normal limits.  Defendant Kaplan examined plaintiff's pupils and determined that his neurological response was normal.  He tested plaintiff's deep tendon and straight leg reflexes, which were normal; however, plaintiff was unable to raise his right arm "all the way up."

Overall, defendant Kaplan determined that plaintiff had "questionable minor muscoloskeletal back pain," no evidence of neurological, skeletal or functional damage and no discernible "organic" cause for his back pain.  He determined that plaintiff's injury was "non-emergent" and would take time to heal.  He discussed "self-physical therapy" with plaintiff and provided him with information about stretching.  He told plaintiff that he could talk with his usual doctor, Dr. Horn, about arthritis and additional pain medications. Defendant Kaplan did not prescribe plaintiff any additional medications or order x-rays because he believed that "self-physical therapy" and analgesic balm, along with plaintiff's existing Tylenol and piroxicam prescriptions, were sufficient to provide adequate pain relief and treatment.  He did not prescribe plaintiff a muscle relaxer.  Muscle relaxers are used only

6

for short periods of time following an acute injury.

Also on February 17, 2006, plaintiff submitted a health service request, in which he asked for a refill of Tylenol and for his request for arthritis medication to be forwarded to Dr. Horn.  On February 22, Dr. Horn asked the nurses to check whether piroxicam had been sent to plaintiff.  In addition, physician's orders indicated that plaintiff could take Tylenol 325 milligrams three tablets three times daily as needed for six months, in addition to taking piroxicam.  Defendant Klotzbach was responsible for ordering and issuing plaintiff's medications.  He advised Dr. Horn that plaintiff had been getting piroxicam and Tylenol regularly.

On February 23, 2006, plaintiff submitted a health services request form, in which he requested a refill of Tylenol and stated that he was still experiencing soreness in the middle of his back.  In addition, he asked when he was scheduled to see Dr. Horn "to address his medical needs."  Defendant Schmitt checked plaintiff's chart and determined that the doctor's examination on February 17, 2006 had been negative and that the doctor had found "nothing out of line."  She wrote back to plaintiff that "You just saw MD on 2/17/06.  No further [appointments] scheduled for you."

On February 26, 2006, plaintiff submitted a health services request form, in which he asked to see Dr. Horn regarding his medications.  He wanted a medication for arthritis specifically and stated that the doctor he had seen on February 17, 2006 had told him that

7

he needed to discuss this, and "other issues" with Dr. Horn.  Plaintiff did not ask to see health services staff.  Defendant Schmitt wrote back to plaintiff and recommended that he request sick call.  He did so on February 27.

On February 28, plaintiff submitted another health services request form, in which he asked to see health services staff.  Plaintiff stated that he did not see defendant Kaplan's "extensive medical notes" about his slip-and-fall accident in his medical records and that he was still experiencing problems with his back.  Plaintiff suggested that "perhaps I should see a professional outside physician" regarding his back pain.  Defendant Schmitt responded to this request, noting that Kaplan's notes were in plaintiff's chart.  She told him that glucosamine had been ordered and that it would be sent when it arrived.  (Dr. Horn had ordered the glucosamine for plaintiff.  Glucosamine is a supplement that helps build cartilage and restore and lubricate joints.)  Defendant Schmitt did not schedule a doctor's appointment or sick call for plaintiff because he had seen a doctor only eleven days earlier.

On March 10, 2006, defendant Klotzbach examined plaintiff, who continued to complain of "tightness" in his back.  When plaintiff told defendant Klotzbach that he wanted to see a chiropractor or specialist to ease his pain, defendant Klotzbach changed the subject. Plaintiff had been told previously that chiropractors are not used in the prison system.

On March 15, Dr. Horn issued a verbal order to defendant Schmitt that plaintiff was

8

to use analgesic balm on his back and neck for two months.  Defendant Schmitt wrote this down.  Dr. Horn did not order a follow-up appointment for plaintiff.

On March 20, 2006, plaintiff wrote to Dr. Horn, stating that the glucosamine was a "wonderful find," that he was able to move around much better and that he had noticed a great improvement all around.  He noted also that he still had "tightness" in his back from the slip-and-fall accident.  Defendant Schmitt told plaintiff that his letter had been referred to Dr. Horn.

On April 20, 2006, plaintiff asked the health services unit to provide him with the name of the company that took x-rays of his back the previous day and asked which doctor had ordered them.  Defendant Klotzbach provided plaintiff with the name of the company and told him that Dr. Horn had ordered the x-rays because of plaintiff's "low back pain."

On May 3, 2006, plaintiff asked to see his x-rays.  In addition, he asked that staff "file all correspondences regarding assistance in my recently activated new back area problem." He asked to see health services staff.  Defendant Schmitt referred plaintiff's request to the health services unit manager.

On June 1, 2006, plaintiff asked where he was on the list to see Dr. Horn for his back pain.  Defendant Schmitt reviewed the physician's orders regarding plaintiff and determined that Dr. Horn had not asked that plaintiff be scheduled for an appointment.  She told plaintiff that the doctor had not scheduled him for an appointment.

9

On June 24, 2006, plaintiff submitted a health services request in which he stated that his back pain had increased after he had moved to a new unit.  He stated that his mattress was hard and asked for a "thick blue" mattress or two regular mattresses. Defendant Klotzbach responded to plaintiff's request on June 25, 2006 and told him that the health services unit was not involved with decisions regarding mattresses.

Prisoners must meet certain criteria in order to receive an extra mattress or a special mattress by nursing staff.  For example, a nurse may issue an order if the prisoner has a certain kind of ulcers, third-degree burn, hip or knee replacement, severe degenerative joint disease, orthopedic injury or skeletal trauma.  Otherwise, a doctor must issue the order.  (It is not clear from the record whether defendant Klotzbach referred this information to Dr. Horn, but it appears that he did not.)

On September 19, 2006, plaintiff submitted a request in which he again asked for an extra mattress or a new one.  He stated that "every day I'm in more and more pain.  I've tried sleeping on my pillow but to no avail.  I need help!  Immediately.  This is for the record."  However, plaintiff did not ask to see medical staff.  Defendant Schmitt responded to plaintiff's request.  She stated that he should check with an officer about the "need for a new [mattress]" and that he should request to be seen at sick call if he needed to be evaluated for pain.

On November 19, 2006, plaintiff submitted a request in which he stated that he

10

wanted a review of his back problems, which were still bothering him.  Plaintiff asked to see Dr. Horn, health service staff and a chiropractor.  Defendant Schmitt responded that "we don't do chiropractors here — not an option" and advised him to request sick call.  She did not schedule him to be seen by a doctor.

On December 18, 2006, plaintiff wrote in a request form that ice was not helping his back.  Defendant Klotzbach recommended alternating the ice with warm, moist compresses.

Throughout 2006, plaintiff submitted numerous health service requests that were handled by nurses other than defendants Schmitt and Klotzbach.  On December 29, 2006, another nurse at the Kettle Moraine Correctional Institution found a "knot the size of a small orange" in plaintiff's mid-to-upper back.  She referred him to Dr. Horn.  Plaintiff was transferred from the Kettle Moraine Correctional Institution to another correctional institution shortly thereafter.


OPINION

As noted above, the parties filed cross-motions for summary judgment, both of which are now before the court for resolution.  Because plaintiff would have the burden to prove his case at trial, it is his burden at the summary judgment stage to come forward with enough evidence to allow a reasonable jury to find in his favor.  Borello v. Allison, 446 F.3d 742, 748 (7th Cir. 2006); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).  I

11

have considered first whether, when all reasonable inferences are drawn in plaintiff's favor, his claims survive defendants' motion for summary judgment.  E.g., Butera v. Cottey, 285 F.3d 601, 605 (7th Cir. 2002) (on motion for summary judgment, court must draw all reasonable inferences in favor of non-moving party).  Because plaintiff has not adduced sufficient evidence to allow a reasonable jury to find in his favor, I must deny plaintiff's motion for summary judgment and grant defendants' motion.

Plaintiff's claim that defendants denied him adequate medical care arises under the Eighth Amendment, which prohibits cruel and unusual punishment. Under the Eighth Amendment, a prison official may violate a prisoner's right to medical care if the official is "deliberately indifferent" to a "serious medical need."  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).

A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. Johnson v. Snider, 444 F.3d 579, 584-85 (7th Cir. 2006).  A medical need may be serious if it "significantly affects an individual's daily activities," Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), if it causes pain, Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir. 1996), or if it otherwise subjects the prisoner to a substantial risk of serious harm, Farmer v. Brennan, 511 U.S. 825 (1994).  Chronic and substantial pain may constitute a serious medical need.  Gutierrez v. Peters, 111 F.3d 1364, 1370 (7th Cir. 1997).  However, "[not]

12

every ache and pain or medically recognized condition involving some discomfort" warrants relief under the Eighth Amendment.  Id. at 1372.

"Deliberate indifference" means that the officials were aware that the prisoner needed medical treatment, but disregarded the risk by failing to take reasonable measures.  Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997).  Inadvertent error, negligence, gross negligence and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment.  Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996); Snipes v. Detella, 95 F.3d 586, 590-91 (7th Cir. 1996).  Thus, neither incorrect diagnosis nor improper treatment resulting from negligence violates the Eighth Amendment.  Gutierrez, 111 F.3d at 1374.  Instead, "deliberate indifference may be inferred [from] a medical professional's erroneous treatment decision only when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." Estate of Cole v. Fromm, 94 F.3d 254, 261-62 (7th Cir. 1996).

I turn first to the question whether plaintiff's back pain constitutes a serious medical need.  Plaintiff faces two hurdles.  First, he has not identified any expert evidence about the nature of his condition or his need for care.  The only doctor who evaluated plaintiff's back pain was defendant Kaplan, who determined that plaintiff had "minor musculoskeletal lower back pain" and that there was no neurological, skeletal or functional damage.  Plaintiff

13

speculates that this is because defendant was looking at the wrong part of his back, but he adduces no evidence to back up his belief.

Second, this lack of expert evidence would be less problematic if plaintiff provided his own detailed assessment regarding the severity of his pain.  As the Court of Appeals for the Seventh Circuit has noted, pain is a "uniquely subjective experience."  Cooper, 97 F.3d at 916-17.  Thus, had plaintiff described the intensity of his pain, it would have aided the court in evaluating his claims.  The only evidence that plaintiff has adduced that suggests that his back pain was severe is that the pain was chronic, that he requested and received some medical treatment for this pain and, in late December 2006, a nurse discovered that plaintiff had a large knot in his back, which prompted her to refer him to a doctor.

Not only is the record largely devoid of evidence of the severity of the pain that plaintiff suffered, it appears that the level of pain was not consistent.  In his requests for treatment, plaintiff described his back problem as "tightness" and "soreness."  At other points, it appears that plaintiff's pain was more severe.  For example, immediately after plaintiff fell in January, he had trouble moving about.  He then experienced some indeterminate level of pain for several months.  In May, 2006, plaintiff explained to staff that he had a "new" back problem, for which he requested care.  In June through September, after plaintiff was moved to a new unit, he stated that his mattress was causing his back pain to worsen.  In September, he complained of increasing pain.  It is possible that at some

14

point, plaintiff's back pain was severe enough to constitute a serious medical need. However, he has not provided the court with sufficient evidence to determine when that might have been.

Thus, it appears that plaintiff's back pain falls into the category of "aches and pains" that, while uncomfortable and troubling to the sufferer, are not sufficient to trigger the protections of the Eighth Amendment. Moreover, even if I could find that plaintiff's back pain constituted a serious medical need, his claims against defendants would fail because he has failed to adduce evidence that any of the defendants were deliberately indifferent to his need for treatment.

I consider plaintiff's claim with respect to defendant Kaplan first. Defendant Kaplan was a visiting doctor who saw plaintiff only once. Plaintiff asserts that the following is evidence of defendant Kaplan's deliberate indifference to his need for treatment: he ignored plaintiff's complaints about pain in the middle of his back and focused instead on his lower back, did not touch plaintiff's back during the examination, did not prescribe additional medication for plaintiff and told plaintiff to talk with his usual doctor about his arthritis pain.

The undisputed facts demonstrate that prior to his examination of plaintiff, defendant Kaplan reviewed plaintiff's medical record before he met with plaintiff. In doing so, Kaplan noted that plaintiff had been experiencing back pain following his fall in late January, was

15

taking Tylenol and an anti-inflammatory drug and had been provided with a bag for hot and cold compresses.  At the appointment, Kaplan had plaintiff do several tests to determine the nature of his back pain.  Based on this examination, defendant Kaplan determined that plaintiff had "questionable muscoloskeletal back pain," which was "non-emergent" and would take time to heal.  He did not prescribe plaintiff muscle relaxers to control the pain (because they are appropriate only for short-term use with acute pain) and instead recommended analgesic balm, stretching and "self-physical therapy."

Plaintiff dismisses the value of defendant Kaplan's treatment, stating that he just "sat [in] a chair and only took handwritten notes, never touching Lowe at any time."  Plt.'s Br., dkt. #39.  However, other than plaintiff's own opinion, there is no evidence that defendant Kaplan's examination of plaintiff was lacking.  Defendant Kaplan met with plaintiff and took at least some steps to evaluate and resolve his complaints of back pain.  Although it is clear that plaintiff did not receive the precise treatment he wanted from defendant Kaplan, mere disagreement with the course of medical treatment does not violate the Eighth Amendment.  Snipes, 95 F.3d at 591.  Therefore, defendant Kaplan's motion for summary judgment will be granted on plaintiff's Eighth Amendment claim against him.

Next, plaintiff contends that defendant Schmitt was deliberately indifferent to his need for treatment when she failed to provide plaintiff with adequate pain medication shortly after his fall and she later "withheld" doctor's appointments when plaintiff asked to

16

be scheduled for them.  Defendant Schmitt examined plaintiff on the day that he fell and received his complaint the next day that he was hurting badly.  She recommended that he use analgesic balm and ice and heat compresses to manage the pain (he was already using an anti-inflammatory drug and Tylenol regularly).  Two days later, plaintiff again complained that he was experiencing pain and asked for muscle relaxers and to see a doctor.  Defendant Schmitt recommended stretches and exercises that might help plaintiff manage his pain, but did not schedule him for an immediate appointment with the doctor because he was already on the list to see a doctor and she had determined that he was not in need of immediate care.

It is clear that defendant Schmitt did not ignore plaintiff's need for treatment immediately after his fall.  Instead, she responded to his requests and provided him with suggestions for managing his pain.  Although she declined to arrange for muscle relaxers for plaintiff, he has not provided any evidence that this was an inappropriate course of treatment.  Thus, it is not possible to conclude that defendant Schmitt's recommendations were "substantial departure from accepted professional judgment, practice, or standards" and therefore indicative of deliberate indifference.  Estate of Cole, 94 F.3d at 261-62.

Plaintiff fares no better with his argument that defendant Schmitt's refusal to schedule doctor's appointments for plaintiff several times over the course of the following year was deliberate indifference.  In late February, defendant Schmitt declined to schedule

17

an appointment because plaintiff had just seen a doctor.  In mid-March, she knew that Dr. Horn had directed certain treatments for plaintiff, but had not indicated that she needed to see plaintiff. At other times, defendant Schmitt recommended that plaintiff request sick call, where he could be evaluated and scheduled for an appointment if necessary.  Although defendant Schmitt could have personally insured that plaintiff was seen by a doctor on a regular basis, it is not indicative of deliberate indifference that she did not.  Again, deliberate indifference is more than negligence or even malpractice.  There is no evidence that suggests that defendant Schmitt's actions were a substantial departure from good practice, or even inappropriate under the circumstances.  Consequently, defendants' motion will be granted with respect to defendant Schmitt.

This leaves plaintiff's claims with respect to defendant Klotzbach.  Defendant Klotzbach examined plaintiff on March 10.  When plaintiff suggested that he needed to see a chiropractor (in spite of the fact that he had been informed previously that they were not used in the prison system), Klotzbach ignored the request and changed the subject.  At the time, plaintiff was receiving other medical care.  In June, 2006, Klotzbach did not order a better mattress for plaintiff.  Defendant Klotzbach asserts the health services unit was not involved with the decision because plaintiff did not meet certain medical criteria for receiving a special mattress.   Plaintiff argues that defendant Klotzbach should have disregarded these criteria because he knew that plaintiff had back pain.  In both instances,

18

defendant Klotzbach was following prison policies, the legitimacy of which plaintiff has not challenged.   The fact that defendant Klotzbach did so is not evidence of deliberate indifference.

ORDER

IT IS ORDERED that the motion for summary judgment of defendants Roman Kaplan, Mary Jo Schmitt and Dan Klotzbach is GRANTED.  IT IS FURTHER ORDERED that the motion for summary judgment of plaintiff Mark Lowe is DENIED.  The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 19th day of February, 2008.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

19